UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM RIDGEWAY,

          Petitioner,

v.                                CASE NO. 06-CV-11070
                                HONORABLE JOHN CORBETT O'MEARA

MARY BERGHUIS,

          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.     Introduction**

Michigan prisoner Malcolm Ridgeway ("Petitioner") has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  Petitioner was convicted of voluntary manslaughter and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court.  He was sentenced as a second habitual offender to consecutive terms of 15 to 22 ½ years imprisonment and five years imprisonment on those convictions in 1999.

In his pleadings, Petitioner raises claims concerning the jury instructions, the refusal to read back testimony, the admission of other acts evidence, prosecutorial misconduct, the effectiveness of trial and appellate counsel, the sufficiency of the evidence, and cumulative error.  For the reasons stated, the Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

1

## II.      Facts and Procedural History

Petitioner's convictions arise from the shooting death of Myron "Steel" Wilson in

Detroit, Michigan on June 14, 1998.  The record reveals that Wilson and another man, Donald

"Ultra Man" Stewart, beat Petitioner while he was inside a drug house in the city.  Petitioner

followed the men outside and shot at them, killing Wilson but missing Stewart.  Petitioner fled

the scene, but was subsequently arrested and charged with first-degree premeditated murder,

assault with intent to murder, and felony firearm.

The Court adopts the summary of the trial testimony as set forth by the State Appellate

Defender on direct appeal.  Those facts are as follows:

> Donald Stewart testified that on June 14, 1998, the day of the shooting, he had
> known Malcolm Ridgeway for about six months. T 4/13/99, p 48. About two or
> three weeks before June 14, Stewart was riding with Ridgeway and another man
> when Ridgeway asked Stewart if he wanted to buy some drugs and Stewart
> refused. Id. at 50. They drove to several different places where Ridgeway went in
> the buildings. At the last one Ridgeway came out with a Jamaican-looking man
> with dreadlocks and with a gun who told Stewart to get off his property. As
> Stewart turned to say he was with Ridgeway, Mr. Ridgeway stabbed and socked
> Mr. Stewart. Id. at 51-52. Mr. Ridgeway and the two other men took Stewart's
> money and cellular phone and left him there. Id. at 54.
>
> Mr. Stewart went on to admit that "Malcolm thought I had some problem with
> him." T 4/13/99, p 55. Sometime before the stabbing incident a woman walking
> with Malcolm Ridgeway had asked Stewart to sell her some crack, and Stewart
> had directed her to a nearby house. A few minutes later she came back to Stewart
> to complain, "He sold me some fake stuff." Id. at 57. The next day Mr. Ridgeway
> and the woman approached him to ask about the sale, and he explained that barely
> knew the seller and what happened was not his responsibility. Id. at 58-59. Weeks
> later, when Ridgeway stabbed Stewart, Ridgeway said Stewart "ganked her," i.e.,
> "Had ripped her off." Id. at 59.
>
> Donald Stewart went on to state that in the afternoon on June 14 he and Myron
> Wilson drove to the house of Arthur "Ace" Evans on Burgess Street in Detroit. T
> 4/13/99, pp 60-61. Myron Wilson was nicknamed "Steel" because he was cocky,
> muscular, and weighed around 230 pounds; Donald Stewart was called "Ultra
> Man." Id. at 63-64,97. Ace Evans's place was a "smoke house," a place where

2

people smoked crack, and Stewart had sold crack. Id. at 61-62, 101-102. Mr. Stewart said that he and Mr. Wilson walked in the side door, and Wilson stayed in the kitchen, while Stewart walked to the front room, where he saw Malcolm Ridgeway.  Id. at 62-63. Mr. Ridgeway jumped up, and he and Stewart began fighting. Mr. Wilson ran into the room to help Stewart and they both fought Ridgeway.  Id. at 64. Among other things, Stewart grabbed a large ashtray from Ridgeway and hit Ridgeway in the head with it, causing him to bleed. Id. at 65, 122. Mr. Stewart admitted that Mr. Ridgeway did not pull a gun in the house and made no movements as if he were trying to get a gun. Id. at 123-124.

The people in the house who were not in the fight ran out the front door, and Stewart heard someone say something about the police. He and Steel Wilson ran from the living room back to the kitchen and out the side door to their car in the driveway. Myron Wilson jumped into the driver's seat, and Donald Stewart began to get into the passenger seat. Mr. Stewart did not see Malcolm Ridgeway come out of the house, but saw Ridgeway by the car window with a revolver in bis hand. T 4/13/99, pp 66-69. Malcolm Ridgeway shot through the driver's window. Donald Stewart ran. Id. at 69. As he jumped a fence, Stewart heard another shot and kept on running. He looked back and saw Ridgeway following him and kept going until he got away. Id. at 69-70.

Cynthia Kennedy testified that she had been spending the night of June 27 with Malcolm Ridgeway at a motel room. T 4/13/99, p 133-134, 146-147. "I was his date," i.e., she was working as a prostitute, and had met him earlier that evening at a crack house.  Id. at 135-136,141-142. "Malcolm told me that he shot a guy named Steel," and he said it almost as if he were bragging. Id. at 138-139, 157. Soon after that, at around midnight, the police came in and arrested them. Id. at 139-140, 148.

Robert and Angela Blackburn, a husband and wife who were staying at Ace Evans' house, testified that they had been getting high on crack when Malcolm Ridgeway came to the house. T 4/14/99, pp 13-14, 71. Mr. Ridgeway joined them in smoking crack and at some point showed the revolver tucked in his waistband to them. Id. at 14-15, 71-72.

Ultra Man Stewart and Steel Wilson arrived; Stewart often came to Evans' house to sell drugs. T 4/14/99, pp 46-47, 73. Mr. Stewart and Mr. Ridgeway saw each other but did not do anything. Ultra Man Stewart was talking with Ace Evans when Stewart suddenly came across the living room and jumped on Malcolm Ridgeway, surprising Ridgeway so that he was pinned to the sofa and could not defend himself. Id. at 18, 49-50, 65-66, 75-76, 97, 110. Steel Wilson joined Mr. Stewart to help beat Mr. Ridgeway. Mr. and Mrs. Blackburn stated that Ridgeway was hit repeatedly on the head by Stewart and Wilson witb glass and marble ashtrays, causing the ashtrays to shatter and Ridgeway to bleed profusely. Id. at

3

19-21,29-30,44-45,76-78,81, 93-94. The fight ended when Mrs. Blackburn ran out the front door and told the neighbors to call the police. Id. at 22, 79.

Mr. and Mrs. Blackburn said that Ultra Man Stewart and Steel Wilson went out the side door. Mr. Ridgeway reached under the couch where he had put his pistol, grabbed it, and went out the front door. When he came out of the house Ridgeway was staggering and disoriented. The B1ackburns then heard shots. T 4/14/99, pp 24-27,66,80-81,96-97.

The pathologist testified that Myron Wilson's body had four gunshot wounds: two to the head, one to the back, and a grazing wound to the finger. T 4/14/99, pp 115-116, 122; in addition, see T 4/15/99, p 60. Mr. Wilson was 233 pounds and 5'8" and "well built." T 4/14/99, pp 118-121.

Malcolm Ridgeway's friend Susan Simpson, who had treated Ridgeway's wounds, testified that he told her that after he was beaten and his assailants had run outside, he went out and shot one of them. However, she did not remember Ridgeway saying he went outside intending to shoot the man. T 4/19/99, pp 84-85, 93, 95.

Sergeant Isaiah Smith testified that he interrogated Malcolm Ridgeway at the Detroit Police Department at 1300 Beaubien on June 27, the day Ridgeway was arrested. He saw that Ridgeway had scars on his face and a scar on the back of his head. T 4/15/99, pp 6, 26-27. The wound on the hack of his head was still healing. Id. at 58. After waiving his *Miranda* rights Mr. Ridgeway gave a statement. Id. at 4-15.

Sergeant Smith read Malcolm Ridgeway's statement to the jury. T 4/15/99, pp 17-23. Mr. Ridgeway said that he had bought $50 worth of crack from Ultra Man Stewart that turned out to be fake. About a month later and two months before the instant shooting, Ridgeway encountered Stewart again and asked for his money back, but Stewart denied owing Ridgeway anything. Two weeks later Stewart asked Ridgeway and a friend for a ride, but when asked by Ridgeway he again denied owing Ridgeway anything. Mr. Ridgeway and his friend took $4 and a cell phone from Stewart, along with his shoes. At Ace Evans' smoke house, after he was beaten by Stewart and Wilson, Ridgeway grabbed his pistol and ran outside. He saw Stewart reaching into the glove compartment and fired a shot at him, missing him but hitting Wilson, who was in the driver's seat. Mr. Ridgeway chased Stewart and then returned to the car, where he saw Wilson looking for something. He shot Wilson a second and third time, including in the head, while Wilson was still fumbling with his hands to get something. He admitted that he did not see Stewart or Wilson with a weapon, but knew that they normally carried guns. T 4/15/99, p 23. Mr. Ridgeway denied intending to kill anyone. Id. at 18.

4

Defendant Malcolm Ridgeway testified and admitted that he was addicted to
crack. T 4/15/99, p 64. He knew Ultra Man Stewart and Steel Wilson as drug
dealers; he had seen them beat people who were in debt for drugs and had seen
them take people's cars. He had also seen Wilson with a gun on several occasions.
Id. at 66-69. Mr. Ridgeway admitted that the next time he saw Mr. Stewart after
Stewart had cheated him with the fake crack he had hit Stewart, taken $4 and a
cell phone from him, and had him take his shoes off, as drug dealers commonly
hid money in their shoes. Mr. Ridgeway denied stabbing Mr. Stewart. Id. at
82-83.

The next time Malcolm Ridgeway saw Ultra Man Stewart was on June 14 at Ace
Evans' house. Mr. Ridgeway admitted having a pistol, but said he intended to sell
it to buy more drugs. T 4115/99, pp 84-86. When Stewart and Wilson jumped on
him and beat him, Ridgeway was completely surprised. Id. at 94-95. He was hit
repeatedly with a beer bottle, glasses, and ashtrays. His head was split open, his
nose was broken, he had a gash by his eye and many other cuts, and he was
bleeding heavily. Id. at 98-104.

When Stewart and Wilson ran out, "I didn't have time to sit there and just
rationalize the situation." T 4/15/99, p 106. Mr. Ridgeway reached under the
couch and grabbed the pistol and ran out the front door, intending to run to safety
at some friends' house nearby. Id. at 107; T 4119/99, pp 42-43. "I'm disoriented
and blood is in my eyes. I'm trying to see." T 4/15/99, p 107. He heard Ultra Man
Stewart say, "that MF'er [is] coming for some more.... I'm gonna' F him up. Hand
me that gun." Id. at 112. He thought they were going to kill him. Id. at 113, 124,
135. He turned when he heard the car door squeak and saw that Steel Wilson was
getting out of the passenger side of the car with a pistol in his hand. Mr.
Ridgeway fired a total of three shots and Wilson fell. Id. at 113-114; T 4/19/99,
pp 18-27. He left the scene and was eventually able to phone a friend to come get
him and to treat his wounds. T 4/15/99, pp 114-115. As he had told Sergeant
Smith, Malcolm Ridgeway denied that he had intended to kill anybody. Id. at 123.

On the murder count, the trial judge instructed the jury on premeditated murder
and the lesser offenses of second-degree murder and voluntary manslaughter. T
4/20/99, pp 29-33. On the assault count, he instructed on assault with intent to
murder and the lesser offense of assault with intent to do great bodily harm. Id. at
34-37. The judge also instructed the jury on self-defense, including that a person
may only use as much force as he thinks is necessary at the time to protect
himself and must avoid using deadly force if he can safely do so; he must
honestly and reasonably believe that what he did was immediately necessary. Id.
at 37-40. The judge concluded the self-defense instructions by stating, "the
prosecutor must prove beyond a reasonable doubt that the defendant did not act in
self-defense." Id. at 40.

At the end of the instructions the prosecutor requested that the judge read the instructions on inferring state of mind. T 4/20/99, p 43. Defense counsel requested that the trial judge reread the self-defense instructions, but the judge refused "unless they request it." Id. at 44-45, 49. He then read the instructions that the jury could infer that the defendant had an intent to kill if he used a dangerous weapon in a way likely to cause death and that he intended the usual results that follow from the use of a dangerous weapon. Id. at 49-50.

During deliberations the jury requested that the testimony of various witnesses be reread. The trial judge told them to discuss the testimony among themselves and if there were any specific areas on which they had confusion he would have the reporter play back the testimony. T 4/20/99, pp 51-52. They requested repetition of the instructions on first and second-degree murder and manslaughter, and the judge reread those instructions. Id. at 53-56. During their deliberations the next morning, the jury also asked for repetition of the elements of assault with intent to murder, and the trial judge reread both the instructions on that offense and on the lesser offense of assault with intent to do great bodily harm. T 4/21/99, pp 5-7.

Def. App. Brf., pp. 2-8.

At the close of trial, the jury found Petitioner guilty of voluntary manslaughter and felony firearm and acquitted him on the assault charge. The trial court subsequently sentenced him as a second habitual offender to 15 to 22 ½ years imprisonment on the manslaughter conviction and a consecutive term of five years imprisonment on the felony firearm conviction.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the following claims: (1) the trial judge committed reversible error by refusing defense counsel's request to reread the self-defense instructions; (2) the trial court committed reversible error by admitting irrelevant bad acts evidence, the prosecutor failed to give proper notice of such evidence, and trial counsel was ineffective for failing to object to such evidence; (3) the prosecutor's actions denied him a fair trial and due process, and (4) his convictions were against the great weight of the evidence. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Ridgeway*, No. 221290, 2001 WL 1699705 (Mich.

6

Ct. App. Dec. 28, 2001) (unpublished).  Petitioner filed a delayed application for leave to appeal

with the Michigan Supreme Court, raising the same claims as well as the following claims: (1)

the trial court failed to properly instruct the jury on evidence of flight; (2) he was denied due

process by each error and the cumulative effect of those errors; and (3) the trial court erred by

refusing to read back testimony to the jury.  The Michigan Supreme Court denied leave to

appeal.  *People v. Ridgeway*, 467 Mich. 861, 651 N.W.2d 916 (2002).

Petitioner subsequently filed a motion for relief from judgment with the state trial court

raising the following claims: (1) he was denied his right to a fair trial due to erroneous jury

instructions and the ineffective assistance of counsel; (2) the prosecution presented insufficient

evidence to support his convictions; (3) the court violated his rights to a fair trial by refusing to

read back testimony to the jury; (4) trial counsel was ineffective for failing to seek a directed

verdict; (5) trial counsel was ineffective for failing to call a res gestae witness; (6) appellate

counsel was ineffective; and (7) he was denied due process and a fair trial due to the cumulative

effect of the errors in this case.  The trial court denied the motion.  *People v. Ridgeway*, No. 98-

7768 (Wayne Co. Cir. Ct. Nov. 21, 2003).  Petitioner filed a delayed application for leave to

appeal with the Michigan Court of Appeals raising the same claims, which was denied "for

failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v.

Ridgeway*, No. 255217 (Mich. Ct. App. Dec. 16, 2004) (unpublished).  Petitioner then filed an

application for leave to appeal with the Michigan Supreme Court, which was similarly denied.

*People v. Ridgeway*, 474 Mich. 897, 705 N.W.2d 129 (2005).

Petitioner thereafter submitted his federal habeas petition asserting the following claims

as grounds for relief:

7

I.     The trial court's instructions violated his right to a fair trial and properly instructed jury and the right to a jury trial under the Federal Constitution in the following ways:

    a.     Where self-defense was the crucial issue at trial, the trial judge committed reversible error by refusing defense counsel's request to reread the self-defense instructions.

    b.     The court violated his federal Fifth and Sixth Amendment rights to a fundamentally fair trial when the court abused its discretion by refusing the jury's reasonable request to reread testimony thereby prejudicing his self-defense.

    c.     The trial court committed reversible error by admitting irrelevant bad act evidence contrary to FRE 404(b) where the prosecutor failed to show that its probative value to a material issue outweighed its inherently prejudicial character, thereby denying him due process under the US Const Ams V, XIV.

    d.     The trial court's failure to give the required flight instruction deprived him of due process of law and the right to a properly instructed jury. USCA Const Amends V, VI, XIV.

II.    The prosecutor's actions denied him a fair trial and his due process rights.

    a.     He was denied a fair trial where the prosecutor failed to give notice of intent to admit prior bad acts evidence pursuant to FRE 404(b)(2). USCA Const Amends V, XIV.

    b.     His right to due process of law was violated by the prosecution bringing into evidence the testimony of Cynthia Kennedy.

    c.     The prosecutor's improper conduct during closing arguments resulted in the deprivation of due process of law. USCA Const Amends V, XIV.

III.   He was denied the effective assistance of counsel in the following ways:

    a.     Defense counsel's failure to object to prior bad acts evidence denied him his Sixth Amendment right to effective assistance of counsel.

    b.     Trial counsel failed to object and request the proper jury instructions on flight after the prosecutor had argued his actions

8

after the incident had taken place. USCA Const Amends V, VI, XIV.

    c.    His counsel was ineffective under the Sixth Amendment of the Federal Constitution based on failure to call a res gestae witness who would have testified substantially different to the state's version of the events.

    d.    His convictions must be vacated where defense counsel failed to file a motion for directed verdict of acquittal due to insufficient evidence, thereby depriving him of his Sixth Amendment right to effective representation.

    e.    He received ineffective assistance of counsel on appeal in violation of the Sixth Amendment of the Constitution of the United States.

IV.    His convictions must be vacated based on insufficient evidence to convince a rational trier of fact that he was guilty. USCA Const Amend XIV.

V.    He was denied due process of law and denied his fundamental right to a fair trial by the cumulative effect of individual errors in this case.

Respondent has filed an answer to the petition asserting that it should be denied because the claims are barred by procedural default and/or lack merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2)     resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court
proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see

also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court find a

state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision

must have been more than incorrect or erroneous.  The state court's application must have been

'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also

Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412;

*see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Jury Instruction Claims

Petitioner first asserts that he is entitled to habeas relief because the trial court denied defense counsel's request to re-instruct the jury on self-defense and because the trial court failed to properly instruct the jury on evidence of flight. Respondent contends that the first claim lacks merit and that the second claim is barred by procedural default and does not warrant relief.

#### 1.    Self-Defense

Petitioner claims that the trial court violated his rights by refusing to re-instruct the jury on self-defense when the jury asked for re-instructions on first and second-degree murder and voluntary manslaughter. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the

entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

Additionally, the failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals' denied relief on this claim finding that the trial court did not abuse its discretion in refusing to re-read the self-defense instruction where the jury did not ask for such assistance and the jury instructions fairly presented the issues to be tried and sufficiently protected Petitioner's rights. *See Ridgeway*, 2001 WL 1699705 at *1. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not shown that the trial court's failure to re-instruct the

jury on self-defense rendered his trial fundamentally unfair.  The record reveals that the trial court properly instructed the jury on the elements of the charged offenses and lesser offenses, as well as self-defense.  Those instructions were consistent with the standard jury instructions. The court also re-read the instructions requested by the jury.  Where, as here, the instructions as a whole adequately convey the elements of the offenses and the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's refusal to re-read a previous instruction.  The trial court's instructions, as given, did not deny Petitioner a fair trial.

### 2.  Evidence of Flight

Petitioner also claims that the trial court erred in failing to instruct the jury on evidence of flight.  Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989).  The last *explained* state court judgment should be used to make this determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id*.

Petitioner first properly presented this jury instruction claim to the state courts in his

motion for relief from judgment. The trial court, the Michigan Court of Appeals, and the Michigan Supreme Court denied Petitioner relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, _ F.3d _, 2009 WL 426261, *6 (6th Cir. Feb. 20, 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* _ U.S. _, 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit in the grounds presented). In this case, the Michigan Supreme Court (and the lower state courts) relied upon a clear state procedural default in denying this claim.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d

14

442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his default. He cannot establish that appellate counsel was ineffective or that he was prejudiced so as to excuse his default, however, because this claim lacks merit.

As noted, jury instruction errors rarely form the basis for habeas relief and the failure to instruct the jury warrants relief only when it renders the trial fundamentally unfair. *See, e.g., Estelle*, 502 U.S. at 72. Petitioner has made no such showing. The evidence of flight was relevant and admissible under Michigan law. *See People v. Goodin*, 257 Mich. App. 425, 432, 668 N.W.2d 392 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885 (1995). Although the United States Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer*, 523 U.S. 303, 331 (1998) (dissenting opinion of Stevens, J.). Federal appellate courts have also held that evidence of flight is admissible to show consciousness of guilt. *See United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989); *accord United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). The admission of flight evidence is not fundamentally unfair. *See, e.g., Wright v. Jamrog*, No. 04-CV-71585-DT, 2005 WL 3262544, *7 (E.D. Mich. 2005) (admission of flight evidence was proper under Michigan law and did not justify habeas relief); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), *aff'd* 398 F.3d 783 (6th Cir. 2005). In this case, defense counsel did not request this instruction and the trial court was not constitutionally required to provide it *sua sponte*. Without the instruction, the jury was simply not informed

about consideration of the flight evidence or weighing it one way or the other. Defense counsel

was free to argue that Petitioner had legitimate reasons for his actions and/or that they did not

show consciousness of guilt. Petitioner has failed to demonstrate that the trial court's failure to

*sua sponte* instruct the jury on the flight evidence denied him a fundamentally fair trial. *See,*

*e.g., March v. Bock*, No. 00-10495, 2003 WL 21488691, *9 (E.D. Mich. June 12, 2003)

(denying habeas relief on similar claim).

Lastly, Petitioner has not established that a fundamental miscarriage of justice has

occurred. The miscarriage of justice exception requires a showing that a constitutional violation

probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S.

298, 326-27 (1995). "'[A]ctual innocence" means factual innocence, not mere legal

insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim

of actual innocence] requires petitioner to support his allegations of constitutional error with

new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at

324. Petitioner has made no such showing. This jury instruction claim is thus barred by

procedural default, lacks merit, and does not warrant federal habeas relief.

B.     Re-Reading of Testimony Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court refused to

allow key testimony to be read back to the jury. At the start of deliberations, the jurors asked

for a copy of the testimony of Donald Stewart, Robert Blackburn, Angela Blackburn, and

Petitioner. The trial court responded that the jurors should first talk and deliberate and advised

them to try to remember the testimony collectively. The court also told them that if they were

16

confused after deliberating, they should let him know and he would have the court reporter play back the testimony for them.  Petitioner claims that his due process rights were violated because the trial court discouraged the jury from having the testimony read back to them.  Respondent contends that this claim is barred by procedural default and lacks merit.

As with Petitioner's flight evidence jury instruction claim, this claim is barred by procedural default because Petitioner first presented this claim to the state courts in his motion for relief from judgment.  *See* discussion *supra*.  Additionally, Petitioner cannot establish cause or prejudice to excuse his default as this claim lacks merit.

There is no federal constitutional law which requires that a jury be provided with witness testimony.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 477 (6th Cir. 2006).  No United States Supreme Court decision requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request.  *See Friday v. Straub*, 175 F. Supp.2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding.  *Bradley*, 192 Fed. Appx. at 477; *Spalla v. Foltz*, 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).  Moreover, the record shows that the jury made their request just after they had begun to consider the case.  The trial court noted this fact and instructed the jurors to recall the testimony collectively and to continue deliberations, but to notify the court if they subsequently needed help and the testimony would be made available.  The jury continued deliberating and returned a verdict.  Petitioner has not shown how he was prejudiced by the trial court's actions.  This claim lacks merit.  Petitioner has thus failed to establish cause or prejudice to excuse his default.  He has also failed to demonstrate that a fundamental miscarriage of

justice has occurred. *See* discussion *supra*. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

      C.     <u>Admission of Other Bad Acts Evidence Claim</u>

      Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other bad acts evidence. Specifically, Petitioner challenges the admission of Don Stewart's testimony that Petitioner had previously hit, stabbed, and robbed him during a dispute and the admission of Cynthia Kennedy's testimony showing that Petitioner had been with a prostitute and used drugs. Respondent contends that these claims are procedurally defaulted, not cognizable, and lack merit.

      As noted, the doctrine of procedural default bars federal habeas review when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is adequate and independent. *See, e.g., White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477; *see also Harris*, 489 U.S. at 263-64. Here, the Michigan Court of Appeals rendered the last reasoned opinion on this issue. In dismissing this claim, the court relied upon a state procedural bar – Petitioner's failure to object to the disputed evidence at trial. *See Ridgeway*, 20011699705 at *1-2. Such a failure to object is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carter*, 462 Mich. 206, 215, 612 N.W.2d 144 (2000); *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). A state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules.

*See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied relief based upon Petitioner's failure to object during trial.

Again, as noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See, e.g., Coleman*, 501 U.S. at 753. Petitioner alleges ineffective assistance of trial counsel as cause to excuse this procedural default. Petitioner, however, cannot establish that trial counsel was ineffective to establish cause, nor can he establish prejudice, as this claim lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental

conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1]  Thus,

"[t]here is no clearly established Supreme Court precedent which holds that a state violates due

process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329

F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state

court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id*. at 513; *see*

*also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Petitioner has failed to state

a claim upon which habeas relief may be granted as to this issue.

　　　　Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief.

Petitioner has not shown that the admission of the disputed evidence rendered his trial

fundamentally unfair.  As explained by the Michigan Court of Appeals upon plain error review,

Don Stewart's testimony was relevant to show Petitioner's motive for the shooting, to provide a

context for the events, and to refute Petitioner's claim of self-defense.  Similarly, Cythia

Kennedy's testimony was relevant to explain why Petitioner was with her, how she observed his

injuries relative to his self-defense claim, and why Petitioner made admissions to her following

the shooting.  *See Ridgeway*, 2001 WL 1699705, * 4.  Such testimony was properly admitted

under state law and the prosecution did not make an improper character or propensity argument

based on the evidence.  Petitioner has failed to establish a violation of his rights as to this issue.

He has also failed to demonstrate that a fundamental miscarriage of justice has occurred.  *See*

discussion *supra*.  This claim is thus barred by procedural default, lacks merit, and does not

warrant habeas relief.

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

20

D.    Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by failing to give notice of the intent to admit other bad acts evidence, by seeking the admission of such evidence as well as Cynthia Kennedy's testimony, and by making improper closing arguments.  Respondent contends that these claims are barred by procedural default and lack merit.

As with Petitioner's other bad acts evidence claim, these claims are barred by procedural default because Petitioner failed to appropriately object to such matters at trial.  *See Ridgeway*, 2001 WL 1699705 at *4; discussion *supra*.  Furthermore, Petitioner again cannot establish cause or prejudice to excuse his default as these claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id.* Flagrancy is determined by an examination of four factors:  1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a

21

series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first claims that the prosecutor engaged in misconduct by failing to provide notice of the intent to introduce the other bad acts evidence as required by state law.  On plain error review, the Michigan Court of Appeals found that the prosecution failed to provide the required notice, but concluded that the notice did not affect the admissibility of the evidence and that the absence of notice did not have any significant effect on the proceedings.  *See Ridgeway*, 2001 WL 1699705 at *5.  As an initial matter, the Court notes that the prosecutor's violation of a state law procedural or evidentiary rule does not warrant relief from this Court.  *See, e.g., Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").  Moreover, Petitioner has not shown that the prosecution's failure to give the notice impaired his defense or otherwise rendered his trial fundamentally unfair.

Petitioner also claims that the prosecutor engaged in misconduct by presenting the other bad acts evidence and by introducing Cynthia Kennedy's testimony that Petitioner bragged about killing the victim.  The Michigan Court of Appeals (and the trial court) determined that such evidence was relevant and admissible under state law.  It is not prosecutorial misconduct

22

for a prosecutor to offer evidence which is deemed relevant and admissible by the trial court. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Moore v. Stovall*, No. 06-CV-14824, 2008 WL 2547418, *3 (E.D. Mich. June 20, 2008) (habeas petitioner could not establish that the prosecutor's use of properly admitted testimony constituted misconduct); *see also People v. Noble*, 238 Mich. App. 647, 660, 608 N.W.2d 123 (1999) (prosecutor's good faith effort to admit evidence does not constitute misconduct). Furthermore, as explained *supra*, Petitioner has not shown that his rights were violated by the admission of such evidence. He has thus failed to establish that the prosecutor engaged in misconduct or that the admission of the disputed evidence was improper or rendered his trial fundamentally unfair.

Lastly, Petitioner claims that the prosecutor made improper remarks during closing arguments by stating that Petitioner's actions after the shooting were evidence of guilt and expressing a personal opinion as to Petitioner's guilt. Because the evidence of flight was relevant and admissible under Michigan law, however, the prosecutor did not err in referencing such evidence during closing arguments. Additionally, while it is improper for a prosecutor to express his or her own personal belief as to a defendant's guilt, *see United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002), the record indicates that the prosecutor argued from the evidence that Petitioner was guilty of the charged offenses and had not acted in self-defense. The prosecutor did not express a personal belief in guilt. Accordingly, Petitioner's prosecutorial misconduct claims lack merit. Petitioner has also failed to demonstrate that a fundamental miscarriage of justice has occurred. *See* discussion *supra*. These claims are thus barred by procedural default, lack merit, and do not warrant

23

habeas relief.

      E.      <u>Ineffective Assistance of Trial Counsel Claims</u>

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the admission of the other bad acts evidence, for failing to object/request a jury instruction on evidence of flight, for failing to call a *res gestae* witness, and for failing to seek a directed verdict based upon insufficient evidence. Respondent contends that these claims are barred by procedural default, lack merit, and do not warrant habeas relief.

      1.      <u>Failing to Object to Other Bad Acts Evidence</u>

Petitioner first claims that trial counsel was ineffective for failing to object to the admission of the other bad acts evidence at trial. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate

24

assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Michigan Court of Appeals denied relief on this claim finding that Petitioner had failed to establish that counsel was ineffective because any objection by counsel would have been meritless since the other bad acts evidence was properly admitted. *See Ridgeway*, 2001 WL 1699705 at *6-7. This Court agrees and concludes that the state court's decision is neither contrary to *Strickland* nor an unreasonable application thereof. Because the other acts evidence was relevant and admissible under state law, any objection by trial counsel would have been overruled. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Habeas relief is not warranted on this claim.

### 2. Other Ineffective Assistance of Trial Counsel Claims

Petitioner also claims that trial counsel was ineffective for failing to object/request an instruction on evidence of flight, for failing to call a *res gestae* witness, and for failing to seek a

directed verdict based upon insufficient evidence.  As with Petitioner's underlying flight

instruction claim and his re-reading of testimony claim, these ineffective assistance of counsel

claims are barred by procedural default because Petitioner first properly presented them to the

state courts in his motion for relief from judgment.  *See* discussion *supra*.  Furthermore,

Petitioner cannot establish cause or prejudice to excuse his default as these claims lack merit.

First, Petitioner cannot establish that counsel was ineffective for not objecting to the

flight-related evidence as such evidence was relevant and properly admitted at trial.  *See*

discussion *supra*.  Defense counsel cannot be deemed deficient for failing to make a futile

objection or motion.  *See McQueen*, 99 F.3d at 1328.  Similarly, Petitioner cannot establish that

trial counsel was ineffective for failing to move for a directed verdict as the prosecution

presented sufficient evidence to support Petitioner's convictions.  *See* discussion *infra*.

Petitioner has also not shown that counsel was ineffective for failing to call Willard

Smith Jr. as a witness.  According to Petitioner, Smith would have testified that he heard three

shots fired with a two-second pause between the first shot and the other two shots.  Petitioner

asserts that this testimony would have shown his lack of premeditation and would have

supported his self-defense claim.  Decisions as to what evidence to present and whether to call

certain witnesses are generally presumed to be a matter of trial strategy, though such decisions

must be reasonable.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  The failure to call

witnesses or present other evidence may constitute ineffective assistance of counsel when it

deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 Fed. Appx. 309,

311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  In this case, trial

counsel may have reasonably decided not to call Smith as a witness because his testimony could

have bolstered the prosecution's theory that Petitioner fired multiple close-range shots and acted deliberately and without justification.  In other words, Smith's testimony could have potentially been damaging rather than beneficial to Petitioner's case.  Counsel's decision not to call this witness did not deprive Petitioner of a substantial defense, particularly given that the jury convicted him of voluntary manslaughter rather than first or second-degree murder and given the significant evidence of guilt presented at trial.  *See* discussion *infra*.  Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct in this regard.  His ineffective assistance of trial counsel claims thus lack merit.  Additionally, Petitioner has failed to demonstrate that a fundamental miscarriage of justice has occurred.  *See* discussion *supra*. These claims are thus barred by procedural default, lack merit, and do not warrant relief.

      F.    Ineffective Assistance of Appellate Counsel Claim

      Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the issues Petitioner presented on collateral review on direct appeal of his convictions.  Respondent contends that this claim lacks merit.  This Court agrees. Petitioner cannot establish that appellate counsel was ineffective under the standard set forth in *Strickland, supra*, as the claims raised on collateral review lack merit.  Habeas relief is therefore not warranted on this claim.

      G.    Insufficient Evidence Claim

      Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions.  Respondent contends that this claim is barred by procedural default, lacks merit, and does not warrant relief.  Petitioner asserted that the verdict was against the great weight of the evidence on direct appeal of his convictions, but

27

challenged the sufficiency of the evidence to support his convictions on collateral review.

To the extent that Petitioner continues to assert that the verdict was against the great weight of the evidence, he is not entitled to relief from this Court. In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576 N.W.2d 129, 137 (1998) (internal quotation omitted). This authority is conferred by statute and court rule. *Id.* at 634, 576 N.W.2d at 133 (citing Mich. Comp. Laws § 770.1 and Mich. Ct. R. 6.431(B)). The Michigan Supreme Court has noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id*. at 634 n. 8, 576 N.W.2d at 133. A claim that the verdict is against the great weight of the evidence is a state law issue which is not cognizable on habeas review. *See Lewis*, 497 U.S. at 780.

Nonetheless, Petitioner also asserts that the prosecution presented insufficient evidence to support his convictions. In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*,

319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, voluntary manslaughter is "an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control." *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763 (1993); *see also People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346 (1991); Mich. Comp. L. § 750.321.  When the defendant produces evidence to support a theory of self-defense, the prosecutor has the burden of disproving it beyond a reasonable doubt. *People v. Bell*, 155 Mich. App. 408, 414, 399 N.W.2d 542 (1986); *see also Fortson*, 202 Mich. App. at 20.  "[T]he killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm."  *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10 (1990).  The elements of felony firearm are that the defendant carried or possessed a firearm during the commission or attempted commission of a felony.  *See* Mich. Comp. L. § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (citing *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)).

The Michigan Court of Appeals denied relief on Petitioner's great weight of the evidence claim concluding that the testimony of Donald Stewart, the Blackburns, Cynthia Kennedy, the police officers, and others, as well as Petitioner's own statements and testimony provided sufficient evidence to support his convictions.  *See Ridgeway*, 2001 WL 1699705 at *7.  Having reviewed the trial testimony, this Court agrees and concludes that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of the law and the facts.  Stewart's testimony, combined with the other

29

trial testimony and Petitioner's own admissions, provides sufficient evidence to establish that Petitioner acted with the requisite intent to support his voluntary manslaughter and felony firearm convictions and that he did not shoot the victim in self-defense.

Petitioner's insufficient evidence claims essentially challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618. Given the trial record, the Court concludes that a rational trier of fact could have found the elements of voluntary manslaughter and felony firearm beyond a reasonable doubt. Habeas relief is not warranted on this claim.

H.      Cumulative Error Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial. Respondent contends that this claim is barred by procedural default and lacks merit. Given the Court's determination that Petitioner's individual claims lack merit, he cannot establish that he is entitled to relief based upon cumulative error. Further, the United States Court of Appeals for the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is therefore not warranted on this claim.

**V.      Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition and denies the petition for writ of habeas corpus.  Given this determination, the Court also denies his request for oral argument.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims.  A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

31

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that

leave to proceed *in forma pauperis* on appeal is **DENIED**.


<u>s/John Corbett O'Meara</u>
United States District Judge


Date:  March 25, 2009




I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 25, 2009, by electronic and/or ordinary mail.


<u>s/William Barkholz</u>
Case Manager